**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **G.A., R.A.-1, and L.A.**

**No. 18-0899** (Hampshire County 17-JA-84, 17-JA-86, and 17-JA-87)

**MEMORANDUM DECISION**

Petitioner Father R.A.-2, by counsel Jeremy B. Cooper, appeals the Circuit Court of Hampshire County's July 31, 2018, order terminating his parental rights to G.A., R.A.-1, and L.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harman, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply brief. On appeal, petitioner argues that the circuit court based his adjudication as an abusing parent and the termination of his parental rights on insufficient evidence and that his trial counsel was ineffective.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2017, the DHHR filed a petition alleging that petitioner sexually abused G.A. The DHHR alleged that petitioner's wife, A.C., knew of the abuse, but failed to report it to the police or the DHHR. According to the DHHR, petitioner continued to have consistent contact with G.A. following the incident of sexual abuse.[2] Petitioner waived his preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as a child and petitioner share the same initials, we refer to them as R.A.-1 and R.A.-2, respectively, throughout this memorandum decision.

[2]G.A.'s biological mother is petitioner's ex-wife, J.A. According to the record, G.A. did not live with petitioner, but was regularly brought to his home during visits with J.A.

The circuit court held three adjudicatory hearings in January, March, and April of 2018. The forensic interview of G.A. was admitted into evidence without objection. The circuit court found that the forensic interview of G.A. was reliable, credible, and probative as to the question of whether petitioner sexually abused the child. In the interview, G.A. stated that she first disclosed to her friend that someone touched her inappropriately. G.A. described a time that petitioner tickled her to the point that she urinated on herself and then he took her inside to change her clothes. G.A. was asked where petitioner touched her and she responded by circling the vagina on an anatomically correct female drawing. The interviewer asked G.A. what she was touched with and she circled the penis on a male drawing. The circuit court found that G.A. stated that "she felt horrible, she felt sick, and she told [petitioner] to stop[.]" When the interviewer asked what made it stop, the child stated that A.C. "walked in and 'caught him.'" The circuit court noted that the child indicated she told her mother, J.A., but "[J.A.] didn't say anything about it." The circuit court further noted that the child "had a difficult time discussing what happened to her in the Child First Interview and broke out in a rash and/or hives during the process." G.A. was subjected to a second forensic interview. However, in that interview, she refused to repeat her disclosures and stated multiple times that she did not want to talk about the events.

All of the minor children were examined for signs of sexual abuse and three forensic examiners testified regarding various abnormalities of the children's genitalia. The examiners explained that the abnormalities could have been naturally occurring or the result of sexual abuse. Although these examinations were essentially inconclusive, the circuit court found that the examiners indicated that "some red flags were evident[.]"

According to the circuit court's findings, A.C. testified that, during the "bathroom incident," she noted petitioner and the child were gone for a long time and she became concerned. She yelled for petitioner, but heard no response. Eventually, she went into the bathroom. The circuit court found that A.C. next testified that she,

> observed the minor child, G.A., sitting on the toilet completely naked; that her arms were around [petitioner]; that [petitioner] was crouched down in . . . front of the child; that he had one arm around the child; that his other hand was in . . . front of him, but his hand was not visible to her[.]

A.C. asked petitioner what he was doing and he stated that he was giving the child a hug. A.C. testified that petitioner "looked as if he had seen a ghost, like he jumped out of his skin" and that G.A. looked terrified. Following that incident, A.C. and J.A. agreed not to allow petitioner around the children alone. During his testimony, petitioner denied the allegations of sexual abuse and asserted that the "bathroom incident was a misunderstanding." Petitioner explained that he was hugging the child because she was distraught. The circuit court found that petitioner's explanation was "incredulous."

Ultimately, the circuit court found that G.A.'s "disclosure of sexual abuse was credible and consistent with the observations of . . . [A.C.], which were to a degree corroborated with [J.A.]" The circuit court further found that none of the parents "could articulate a reason as to why [G.A.] would in any way fabricate any allegations of sexual abuse" and that there was "no

indication or evidence" that she was coached to make the disclosures. The circuit court concluded that petitioner sexually abused G.A. and that petitioner was an abusing parent.

In July of 2018, the circuit court held the final dispositional hearing. The DHHR presented evidence to support the termination of petitioner's parental rights. Petitioner did not testify, but, through counsel, continued to deny the allegations of sexual abuse. The circuit court found that petitioner took no responsibility for his actions and that there was no reasonable likelihood that the behaviors warranting the removal of the children from petitioner's home could be corrected. Accordingly, the circuit court terminated petitioner's parental rights by its July 31, 2018, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first argues that there was insufficient evidence to find that he sexually abused G.A. and, therefore, the circuit court clearly erred in adjudicating him as an abusing parent and terminating his parental rights. Petitioner asserts that G.A.'s forensic interview lacked detail regarding the sexual abuse and her disclosures were limited to undefined touching. Further, petitioner asserts that the circuit court placed undue weight on the testimony of the respondent mothers considering those witnesses did not see petitioner in a state of undress when he purportedly vaginally penetrated G.A. Finally, petitioner avers that the physical forensic evaluations were inconclusive and no expert opinion of abuse was rendered.[4] However, we do not find the circuit court's findings that G.A. was sexually abused to be clearly erroneous.

---

[3]The children's respective mothers' parental rights were also terminated. According to the parties, the permanency plan for the children is adoption in their current foster placement.

[4]In an attempt to discredit those facts, petitioner also argues that he has not been indicted on any charges related to the facts of this case. We do not find petitioner's argument persuasive.

(continued . . . )

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Further, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) (citations omitted).

The circuit court's finding that G.A. was sexually abused was supported by clear and convincing evidence. G.A.'s disclosure during her forensic interview was found to be credible by the circuit court. This disclosure, that petitioner touched her vagina with his penis, is consistent with a finding of sexual abuse. Further, the events surrounding the purported sexual abuse were corroborated by A.C. Although petitioner argues that he was not found undressed or caught in the midst of abusing G.A., A.C. described petitioner's frightened reaction, "like he jumped out of his skin," and recounts that G.A. looked terrified. A.C. testified that she was so startled by the event that she decided not to allow petitioner to be alone with the children. Moreover, the circuit court found there was no evidence to suggest G.A. was coached or otherwise motived into making the disclosure. Based on this evidence, we find that the circuit court's finding of sexual abuse was supported by clear and convincing evidence and not clearly erroneous.

This evidence also supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides, in relevant part, that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(5) provides, in relevant part, that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "[has] sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems." The circuit court found that petitioner sexually abused G.A. and, therefore, properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. The children's welfare would be continually threatened by further abuse while in petitioner's care. Accordingly, termination was necessary for the

---

Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides "[u]nder no circumstances shall a civil child abuse and neglect [proceeding] be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings." Therefore, there is no error in proceeding on the underlying petition in advance of any potential criminal charges.

child's welfare. Thus, we find the circuit court did not err in terminating petitioner's parental rights.

Finally, petitioner argues that his counsel was ineffective in that he failed to obtain an independent expert to review and render an opinion on the forensic physical examinations of the children. However, this Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding and we decline to do so here.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 31, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  March 15, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison